Majestic Oil v. Lloyds of London. Ms. Mary. Good morning. May it please the court. My name is Victoria Mary and I represent the appellant Majestic Oil. We appeal from a district court that was determined to grant summary judgment in favor of Lloyds in this case. The district court inverted the summary judgment standards, indulged all inferences in favor of Lloyds, and excluded or ignored evidence that the plaintiff could use to survive summary judgment. Specifically, the district court erred in three ways. First, the district court granted summary judgment on classified evidence allocating the damage of Hurricane Harvey, despite record evidence from lay witnesses and experts allocating sole causation of the loss of the roof to Hurricane Harvey. Second, the district court struck key causation evidence from Majestic Oil's causation expert Greg Becker, finding his affidavit was a sham. And finally, the district court disallowed Becker to supplement his opinions to rule out an earlier storm that the district court then relied on in saying, well, you didn't rule this out. You can't just point to Harvey. I'm granting summary judgment. So I'll take each. Regarding summary judgment, Texas Supreme Court case law is clear. Under Lyons v. Millers, circumstantial evidence is sufficient to support a verdict on concurrent causation. In Lyons, there were lay witnesses who said there was no damage to their property before a storm, and following the storm there was ample damage. That was sufficient to in that case, even though the plaintiff's expert had said, well, it's actually likely there could have been these other causes. We're not sure. The Texas Supreme Court said that's good enough. That is some evidence that the cause of the loss was a covered peril. In that case, it was a storm. Counsel, do you agree that Texas law on the question of concurrent causation is somewhat in flux? I agree that it is somewhat in flux, but I think that the quantum of the question is, well, should we certify the question? You know, it's been certified twice by this court, and the Texas Supreme Court keeps trying to answer the question, but everybody keeps settling. And so there were certified questions pending, I guess, when the briefing was done, but should we do the same thing here? I mean, is that dispositive for this appeal, or how do we get around that? No, Your Honor. I think this case is much more similar to the  case of Hurricane Harvey. The court said, we don't need to certify. We know this is a slightly muddled area of law, but given this summary judgment record and what the district court did in granting summary judgment . . . by the way, that was also a Hurricane Harvey claim in the same district court. We can reverse. This needs to go back. There's clearly a fact issue. So your reading of the advanced indicator case is basically could be concurrent, could be sole cause. It's a jury question. I mean, is it that broad, or is it more restricted than that? No. I think advanced indicator, like this case, is a sole cause case. And I think the panel was saying in advanced indicator, yes, there is evidence that suggests wear and tear, deferred maintenance, whatever else the insurance company wants to present. But there is also evidence from the plaintiff allocating the sole cause to Harvey, and that is this case, and that is a jury's province to determine, not the district court. The district court should not be making credibility determinations or weighing our evidence. We just want a jury to be able to look at everything, look at the evidence of a four-day storm of biblical proportions pummeling the Houston area and destroying a roof, and then if Lloyds wants to come into court and say, well, it was a bad roof, they're welcome to do that, but we'd like a jury to make that determination. So getting back to what the evidence . . . Let me ask you a factual question. What was the explanation for why the expert didn't know the velocity of the wind within a mile? Apparently that's what caused him to change his mind. Is that right? I think you're referring to the supplemental opinion judgment? Right. Okay, so what Becker supplemented his report to say is he found, subsequent to issuing his report, he found weather data that showed a tornado with winds up to 90 miles per hour within a half mile of the property in this case. And he said, based on that, there is no question that the this is not actually dispositive in our view because what Becker actually has said consistently in his first report and his affidavit is that based on talking to the owners, inspecting the roof, looking at the weather data, Hurricane Harvey is more likely than not the cause of the damage, the failure of the roof, that he observed at the property. So it's not . . . But let me interrupt you back to Judge Clement's question though. Why didn't he get the data earlier? It was available. All I can say to that, Your Honor, is it was created for a different case and unfortunately he did not incorporate it into . . . Well, I mean, it struck me in the record as one of those kind of light bulb cases where, you know, he's going through another case and he comes across the data and he says, oh my gosh, this relates to this case too. But the problem is it's untimely, right? Well, even if it is untimely, Judge Wilson, the district court totally failed to consider all the factors in sanctioning the exclusion of this evidence, right? So okay, I'll go with you and say perhaps it was untimely, perhaps Becker should have supplemented with that data earlier. But at the time he supplemented, there was no trial date, there was no scheduling order, there were no deadlines, and in fact expert discovery was ongoing. Becker supplemented as soon as he realized it was relevant. But again, that's just one factor. There are four. The district court did not consider those. And Judge Duncan, you wrote in Lloyds v. Axon Pressure, you reversed because the district court failed to consider the four factors in making a determination that critical expert evidence should be excluded as What did the district court say here in excluding the supplemental report? The district court, in a very perfunctory opinion, said the data's not new, okay. It was available. His failure to acquire it is not grounds to supplement after the deadline. His own delay to seemingly surprise Lloyds at his deposition by altering his ultimate conclusion is not harmless. That's the entirety of his Axon case, the one that I wrote. Well, you can refresh my recollection. It's been a couple terms. The district court there just said nothing in excluding the expert report. So, Your Honor, there were actually two orders in that case. There's two parts of your opinion that you reversed on both, actually. And one, he said nothing. And you said, this is just an abuse of discretion. We've got to send this back. But then the second part, he did have a couple of sentences saying, well, this doesn't really seem to change too much. I don't think it's important to exclude it, basically. And I just remember that the orders were very, very sparse. They were. And, frankly, I think they're quite similar to the one we have here. And this actually... But if the court just applied the first factor, it's untimely, and there's no excuse for why it's untimely. Is that right? No, Your Honor. I mean, the court doesn't have to reflexively go through and recite all four factors, right? They don't have to go through and analyze each one expressly, right? Or do they? Well, I disagree with that. I think under the circuit precedent, the court does need to consider the factors. I'm not saying he has to mention them specifically in exactly the way that they're set out by this court. But it's clear that he has not considered at least two out of the four factors, including the importance of the testimony. That is a very weighty factor. That's a factor that this court has used to say in Betzell and other cases, look, this evidence is critical. And that's exactly what Judge Hughes said in this case. He said causation is the key issue in this case. Those were his words. But then he's excluding evidence that he believes would help the plaintiff survive summary judgment. And the other factors are the prejudice to Lloyds. He doesn't really talk about that. I mean, he says we've surprised them. But again, the supplement was in April, no trial date at that time. The ultimate trial date that was set was in October. There was plenty of time to do any supplemental discovery, if requested, which they never did request it because they asked Becker tons of questions about the supplemental opinion at his deposition. Well, they didn't have the supplemental opinion at the deposition, right? The supplement came out, I guess, post-deposition. He sort of disclosed these new opinions in the deposition as they were examining him, right? That's correct. And the final factor on this supplement is the possibility for a continuance to cure any prejudice. Again, Lloyds didn't ask. There was no trial date. And the district court didn't even consider it. The district court simply went with the most strict possible sanction for this and excluded our evidence. Despite all that, we still think this court can reverse based on the evidence that was properly or probably should have been in the deposition. Becker never said the January 2017 storm caused the damage. What he said is, it may have contributed. That's a possibility. That's not a likelihood. And then he went on to say, however, my assessment, after talking to the owners about the leaks that only appeared after Harvey, which was in August of 2017, is that Harvey is more likely than not the cause of the damage. But doesn't that take us right back to the question under Texas law of concurrent causation and what the plaintiff's burden is under Texas law to exclude non-covered perils? In other words, if we just say first report only, put the evidentiary rulings aside, they stay out, you're saying that summary judgment was still improper because there's enough there because he did say more likely than not it was Harvey. That might survive for summary judgment if it's not, you plaintiff have to exclude all non-covered perils. Well, I would just say that advanced indicator has told us that we don't have to exclude all non-covered perils. Remarkably similar arguments in that case. This is an old roof, wear and tear, deferred maintenance. Well, in advanced indicator, you said there is some evidence such that a jury could allocate damages. And that's all that's required under lines and fees. Is there anything similar? I mean, I know advanced indicator states that there were some affidavits struck, I guess, some expert affidavits. I mean, similar situation or can we tell from that case in this one? I couldn't tell, it just seemed to be noted. I've reviewed the record and I do want to point out to the court that the advanced indicator decision that came out last night said we're not even going to consider those affidavits. We don't even have to reach the issue of those were properly struck. So they did that based on, like I said, a very similar record. I believe they were struck on a different basis, but I also believe that there was a very outcome determinative process to get to where the district court wanted on that case, just as there is in this case. And that is striking or ignoring summary judgment evidence that allows the plaintiff to maintain its burden so that the district court could grant summary judgment. And I think these two cases are quite similar. What about damages? I mean, your damages expert says, here's what it costs to repair the roof. That estimate doesn't have anything to do with whether Harvey caused it or the January storm caused it or whether Warren Terry caused it. He just says here's what it is. Is that enough to survive summary judgment? Well, Your Honor, so I disagree that it doesn't have to do with Harvey because what point? No, no, I'm not saying it does or doesn't. I'm saying that your damages expert who says here's what it costs to repair the roof says I didn't determine whether it's Harvey or whatever. Here's this is what's wrong with the roof. This is what has to be done. But is that enough to sustain a claim related to Harvey? Yes, because the jury just sorts out how much is or isn't based on Becker's report? Or I mean, how does that work? No. So the loss here, this is not a question of whether there were some missing bricks on the roof prior to Harvey. This is not a question of whether there was some wear and tear. Any roof in South Texas has more than its fair share of wear and tear. And I will just point the panel quickly in the record. There is also ample evidence that my client spent $25,000 repairing the roof just a year and a half before Harvey. So this notion that it's, you know, a totally dilapidated roof is just not accurate at all. But to answer your question, Your Honor, and I know I'm short for time, what pointer what Becker said is this Harvey has caused total failure of the roof. It must be replaced. So when pointer comes in and says this is the cost to replace the roof, that is enough because that is the loss that was caused by Harvey requiring full replacement. Thank you, Counsel. You have time for rebuttal. Thank you, Your Honor. Mr. Welcome. Thank you. May it please the court. My name is Bruce Wilk, and I'm here on behalf of underwriters at Lloyd's London. This court can affirm this judgment for two the plaintiff's claim in this case and under both elements, the central elements, damages the dollar and cents that they're trying to get under the insurance policy and under causation, what are the causes of loss to the damages on the roof up at the Majestic Oil? Either grant is sufficient, and under both respects, the plaintiff has failed to allocate in this case. So therefore, that is judgment in favor of the insurer. I would submit that the court should address damages first, as Judge Wilson was pointing out, because if you agree with Lloyd's on the damages front, you get to the end of your opinion quicker. You don't need to get into all the procedural machinations of Becker trying to change his opinion with his late report and all those sorts of things. Looking solely at pointer, okay, damages. That's the So, of course, allocation applies in this case because this is a real case in the real world, right? This isn't an academic exercise. This isn't a law review article. Where are we heading at the end of this? We're heading to a judgment, and a judgment will be very specific, dollars and cents to the penny. And of course, a judgment in a case on an insurance policy, those dollars and cents have to be for items and causes of loss that are covered by the policy, and those dollars and cents cannot include things that the policy does not cover. But counsel, so you're describing a very elegant jury question. So how do you deal with advanced indicator, which does seem, as I read it pretty quickly, you got to love it when the court hands down a case directly related to yours the day before argument. But it seems to say, well, here there's enough evidence that a jury could say solely caused by Harvey, and therefore plaintiff wins, so summary judgment wasn't proper. Isn't that the case here? That is not the case here. How so? So to begin, I have not seen advanced indicator. I did not see that come out last night, and so I can't speak to that case specifically. I will go back and look at that immediately after this. I was not aware a new case came out last night. In this case, there is no expert that has come in and said, here's the evidence that the sole damage in the case is from Hurricane Harvey. In fact, it's the opposite. Under the general gatekeeping function that any court applies, federal rule of law, if you come in and say sole causation, sole damage is from X, this cause over here, what do we require the expert to do? The expert has to show his homework, right? Under 702C, what is your reliable methodology that you have said, okay, I want to say it's Harvey, but there's all this other evidence out there that is contributing to the damage up there. We have that from their own engineer, Mr. Heinrichs, who showed up two months after Harvey. We have pre-Harvey evidence from all the roofers saying this roof needs to be replaced. We have evidence from the adjuster, Mr. Lunt, a nationally respected adjuster after Harvey. We have evidence also after Harvey of another items that are contributing to the damages up there. Mr. Becker, well, frankly, both Mr. Becker and Mr. Pointer failed to address any of the items discussed by Heinrichs, by Hamill when she was discussing all the roofers saying this needs to be replaced, by what Mr. Lunt pointed out, and the second engineer before Becker, what Mr. Barbuto, right, two engineers, Heinrichs and Barbuto, what they pointed out as non-covered contributing to the damage up there. So, to the question, why is this not a sole causation case? Mr. Expert, 702C, show me your homework. Where is Mr. Becker's homework? Mr. Becker said what Lunt said, what Barbuto said, and here is my reliable methodology of how I'm ruling those out as contributing to the damage up here, and therefore, here is how I can say it is only Harvey. This case is the opposite. Mr. Becker admitted, I wasn't asked to do that. You know, you might recall in their opening brief, they said, well, don't hold us to the allocation standard because that wasn't his assignment. Well, that's our whole point. Mr. Becker didn't do that. In fact, in the deposition testimony, he was unaware of that other stuff. He was just asked to talk about Harvey. Could Harvey have contributed to the damage? Okay. Here's another way to say it. Simply proving, or not even proving, let me just say it this way. Simply putting forth an expert report that says Harvey could have caused some of the damage does not prove that it caused all the damage. It doesn't do anything to rule out the other causes. But if they put forth the first report, to be concrete about it, the expert says more likely than not, this was caused by Harvey. Can't exclude that this January storm contributed to roof vulnerability. Right. Which defeats their case, yes. All right. Does a plaintiff under Texas law have to exclude every possible non-covered peril or damages related to a non-covered peril to show that some or bulk or most of the damage was caused by a covered peril? Yes. Yes. But here's the key. Okay. And this maybe goes to your certified question to counsel. There has to be evidence of that. Okay. I think where we've gotten into some issues in this area of the law is that on the outer edges, frankly you've had some insurance companies coming in and saying, well, conceptually wear and tear is out there every time. Right. We all went to physics class and under the basic rules of entropy, the day that that building was done being built, it started to wear and tear. So allocate every time, every case is an allocation case. And I think the questions that the Fifth Circuit has been asking the Texas Supreme Court is, really, is every case really an allocation case? And probably not. Okay. So do you agree with your friend on the other side that we should not certify? Yeah. I don't think you should certify this case. And here's why. Freymire and Overstreet, they really were playing at the outer edges, particularly Freymire, because it was, the Freymire argument was, well, wear and tear is out there every time, so you've got to allocate every time. But there was no evidence in the case of wear and tear contributing to the damages at issue in the case. And that's a key difference here. Okay. And here's another point on the certified question. Okay. Allocation has been around for over a half century in Texas law. Right. Nobody, even on the policyholder side, is arguing allocation should go away, or allocation should just be wiped off the map. Okay. So some cases are allocation cases. And I would submit that this case is an allocation case. This one is just right down the middle. This is like Lowen Valley in 2018, Judge Clement, that you were on, where, and the difference, what's the difference between this case and Freymire? Is the evidence. Okay. What we have in this case is evidence from their own engineer, Mr. Heinrichs, talking about there is a defective roof slope going on out there. There are improper drainage lines. And there are also, literally, the roof has separation from the brick. There's cracks in the cement. Heinrichs is the one who came out when they were buying the property? No. He's the one. Heinrichs is the one who came right after Harvey? Exactly. Okay. Two months after Harvey. Their own guy. And what he talked about, all those sorts of things are contributing to the damage up there. Okay. That's record on appeal site 1216. Then in his deposition, you might recall, this is record sites 1208-09, where we went through photo after photo with Mr. Heinrichs saying, well, what about this? What about that? And he said, yeah, that's not Harvey. That's older, pre-existing damage. That's not Harvey. That's not Harvey. So you have their own guy. There's evidence in the record saying there are other issues going on there that's contributing to the loss. Okay. You also have the evidence pre-Harvey of all the roofers saying this 700-year-old roof needs to be replaced because of all the issues going on here. Post-Harvey, you have nationally respected adjuster, Mr. Lunt, pointing out improper repair, deterioration. You have another engineer come in and talk about other construction defects and other mechanical damage on this roof, all contributing to the damage. But don't you also have testimony that it wasn't leaking before Harvey? You can't just disregard that. No, it's not disregarding. Okay. But just because they went up and put a couple of Band-Aids on it before the storm doesn't mean that that damage has magically disappeared. And I think what illustrates that the best, frankly, is what their own engineer, Mr. Heinrichs, post-Harvey, still saw as conditions on the roof that are contributing to the damage being claimed. Okay. And so specifically to your question, does an engineer have to allocate absolutely everything that, you know, do we have to get the list of every exclusion in the policy and have an engineer's report rule them all out? No. Okay. The only ones they need to rule out is when there is evidence that some of these exclusions are in play and those are the ones that Texas law says the burden is on the insured that needs to be carved out. Okay. And what do we have here? We have the defective roof slope, which, of course, this, so remember, Harvey was not a wind event in Houston. Okay. It was a rain event. Okay. At this property, the winds were like 35 miles an hour, 36 miles an hour. This was a rain inundation issue at this property. Okay. And so when you have a rain inundation issue, they said, oh, a bunch of Harvey rain, that caused new leaks. Okay. But when you have things like defective roof slopes, when you have improper drainage lines that are contributing, right, to the inundation of this roof over time, when you have literal cracks and separation in the roof from the walls and the cement, those are contributing to the damage, right? That's what concurrent causation is. We have concurrent causes, right? Some of it, maybe Harvey, but some of it is these other issues up there. And it cannot be reasonably disputed that there is copious amounts of evidence, evidence in this case, of other causes that are contributing to the damage up there, right? So if you come in and say, I want everything, Texas law says you have to carve out the portions that are not being caused by Harvey, cover peril, but are being caused by these non-covered causes, improper construction, you know, improper maintenance, that sort of thing. And frankly, in this case, Becker's first report, which, you know, admits the farm away, right? He says, yeah, there's this other storm from 2017 that I can't rule out, right? I mean, that's... Well, he didn't rule it out. That's not exactly what he said. He said that it can't be excluded as possibly contributing to roof vulnerability, but he said that it was more likely than not caused by Harvey. And back to Judge Clement's point, you got evidence that it wasn't leaking before, and it was leaking after, and something happened right there between. Maybe it was the confluence and convergence of all these, you know, non-covered perils, but maybe, and what the expert says is more probably it's Harvey. Well, he says more... The other thing I guess it's worth noting to some degree is you guys insured the place, you happily accepted premium when the roof was as it was when you went out and inspected it, what, 18 months earlier? And so you come back and say, well, sorry that it wasn't Harvey. It was all these pre-existing things. I mean... Well, we don't say it wasn't Harvey at all. But I guess that's the question. It just, it seems to me to be fairly harsh to throw the thing out on summary judgment when the plaintiffs at least offered some evidence that it was Harvey. There's obviously evidence that wasn't Harvey. That sounds like a jury question, but maybe that's just an overly simplistic reading of the case. Yeah, well, it can't be a jury question, and here's why, is that, you know, a lay jury is not going to be empowered with some sort of savant engineering ability to say, okay, Mr. Becker himself didn't even do this. How in the world can a lay jury say, oh, I know Mr. Becker didn't address these things and tell us how to carve them out, but we can't. A lay jury in a case like this has no ability to do that. That's why, again, back to our earlier discussion, if you want to come in with a sole causation theory, Mr. Expert, then what do we require under 702C? Show your homework, okay? How are you saying? Now, yes, does he say the words, this was more likely than not Harvey? Great, but his analysis is just wholly lacking on all this other evidence from Heinrichs, Lunt, Barbuto, and others, right? Another way to say it is, I mean, again, allocation law in insurance, it's not some nebulous concept completely disconnected from how we approach expert issues in general jurisprudence, right? If one were to say, you know, well, here's my expert report that says the sole problem with your arm is from something that the defendant did to you. Well, Mr. Medical Expert, you know, were you aware that he had all these ongoing conditions? Were you aware that he was in a car wreck the day before he met the defendant? Were you aware that he was born with a degenerative disease of his arm? Just because they can hold up a report that says, well, I have an expert that says the sole cause is what the defendant did to you, if that expert hasn't addressed these other items, that's not a sole cause evidence, right? He hasn't ruled those out. Does Mr. Becker's supplemental report sufficiently show his homework to create a jury question on causation? No, for the first report, deposition, summary judgments, once they get, see the legal implications of his admissions, they say, oh no, let's not admit the 2017 storm did everything, so he says, here's what I'm going to say about 2017, but what is still noticeably lacking? Anything about the Heinrichs evidence, anything about the Lunt evidence, anything about the Barbudo evidence, he's, there's still a non-covered damages, non-covered causes, that to this day, Mr. Becker has never even mentioned, to say, here's my homework, here's my reliable methodology of how I am carving those things out, and therefore, this was solely harm, okay? Second point to your question. For the first point, was he cross-examined on that issue during his deposition? Any other evidence? Well, he was asked, it was raised, and to my recollection, and I believe this is cited in our brief, I don't know the exact records at the top of my head, but to my recollection, his response was, he just wasn't aware of those things, and in fact, at a record site, 1235, he admits he was not asked to allocate out all the other types of evidence. And so, it wasn't described to him in cross-examination to say, well, what about this evidence in the deposition that wasn't part of the cross-examination? I, it was to, it was to a degree in the sense of, it was raised in the deposition at some point, but his answer was, I wasn't asked to look at that. So, if he didn't look at it, he didn't really go that much further in the examination, right? He didn't consider it, which is an expert problem. The second point on the 2017 storm. So, if you look at what he says, okay, does he say the words, I have now ruled out the 2017 storm, the earlier storm? Yes, those words exist, but this goes back to my show your homework. All he really shows in the report, and all he really talks about when we address the deposition, is that saying Harvey was a stronger storm does not rule out the earlier storm, right? That would be like, if you and I got in a fight, and I'm right-handed, you know, I'm gonna cause more damage with my right hand, and we can all acknowledge that, but that doesn't mean that I'm not also causing damage with my left hand, right? Harvey might have been stronger based on this, you know, new, new evidence, but that doesn't rule out, really, the other storm. So, I would say, you know, that, you know, in another sense, that the reason it was excluded, because on its face, they were trying to say, oh, the lights no longer go red, the light was green. You know, on its face, he was trying to change his conclusion, but if you dig into it, he still didn't even do a good enough job, frankly, because he, I'm sure he, he tried to thread the needle, because he had that damning admission. I know you just have a second. Counsel on the other side said that a decision, I think I wrote it, Axon, said the district court didn't prove, didn't go through the factors, didn't provide reasons for striking the, the, the report affidavit. Do you agree with that, or is that case distinguishable? No, I believe, if, if I recall correctly, the case law is, not that he didn't, not that a trial court is required to recite the factors and go through them explicitly, like Judge Wilson pointed out. The issue in that case was that there was no reason given, right? Whereas here, the district court pointed out the weather data was always available, right? The, the, and, and by the way, this new evidence, new evidence is from a property over half mile away, different insurance policy, different property, all these words. I understand. Thank you. He laid it out. He gave you reasons. Thank you very much, counsel. Ms. Merri, you have five minutes for rebuttal. Thank you, Your Honors. I wanted to correct a couple of things that, or I guess answer some questions you posed to Mr. Wilkin. So he suggested that Becker changed his testimony at the summary judgment stage. That is simply incorrect. The supplement that one of the issues is the supplemental report that was issued in April. Summary judgment wasn't until August. So that's just not true. This weather data came up while he was preparing for his deposition, and that's why he supplemented at that time. So this was not an ambush at the summary judgment stage by any means. And we don't agree that it really changes his ultimate conclusion. I know we talked about that in length in the original opening argument, but the bottom line is, all he said is, this storm that I said might have contributed. I don't think so. And here's why. I have this much more powerful evidence. But what about all the other evidence, Heinrich and the others who came and looked at the roof that Becker doesn't really treat? You got the 2017 storm, but there's other there is other stuff, as counsel opposite said in the record that says it is not caused by Harvey. Well, I think that so first of all, Heinrich never says this stuff wasn't caused by Harvey. He says, Well, there's some stuff up here in his deposition. They go back and forth about could this have been Harvey? Could it not have been Harvey? He's not really a causation expert in this case. But isn't it plaintiff's burden to at least show the allocation between the non Harvey causes and Harvey? Well, again, Your Honor, it's important to remember what is the loss here and Becker's opinion from the beginning has been the roof requires replacement wholesale replacement, and that is based on the that he linked directly to Harvey. He did that by speaking to managers at the scene who observed links were some of the lay witnesses who provided evidence on summary judgment as well. All he did was he traced the links that only appeared post Harvey from the interior to the roof. Becker actually got up on the roof, inspected it, did tactile tests, consulted Noah data and reaching his conclusions and determined that there were so many problems caused by Harvey that the roof was a total loss. And that's why, whether there was a loose brick over here or a missing parapet over there, doesn't really matter for this analysis because Becker is saying Harvey was such a damage to this roof that we must replace it. And that's what pointers of damage estimate is. This is the replacement of the roof, and this is what's caused by Harvey. I also wanted to point out that opposing counsel suggested this was like Lohan Valley. I think Lohan Valley is distinguishable and Lohan Valley. An employee noticed some damage years after it had apparently occurred, and then they sort of retrospectively tried to pick a date within a policy period and say this is the date. This is not the case here. Lay witnesses are circumstantial evidence, and we have witnesses who were in that building five days a week who said we had a functional roof for 18 months after we spent $30,000 repairing it. Lloyd's underwriter said no evidence of leaking in May of 2016. You can't And that's what the district court did. The final point I'd like to make is the January 2017 storm is a little bit of a red herring because Lloyd's actually insured Majestic Oil in January 2017. The original policy was from April of 2016. That's why they sent out their underwriter to do the inspection just following the major repairs that were done to the roof and continued. So the policy we're talking about has always been a Harvey claim because that is what is consistent with our clients, observations and evidence. But if we have to amend to add in the earlier policy, Lloyd's still covered us at that time. And if there are no further questions, I will yield the remaining 20 seconds. Thank you. One thing I think it probably good to do. I expect we'll get it anyway from Council via 20 H. A. You need to grapple with advanced indicator, and I would commend especially Lloyd's Council pages 10 11 and 12 of the opinion particularly. Thank you. Yes. Yes. Thank you. Council for well argued case. Before we call the next case, as I said,